**Leo LaPOINTE, Plaintiff–Appellant,**

v.

**UNITED AUTOWORKERS LOCAL 600, and Doug Thompson, Defendants–Appellees.**

No. 92–1280.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1992.

Decided Oct. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 9, 1993.

Gary A. Benjamin (argued and briefed), Gary A. Benjamin, Detroit, MI, for plaintiff-appellant.

Jordan Rossen, Connye Y. Harper (argued and briefed), Associate Gen. Counsel, Intern. Union, UAW, Detroit, MI, for defendants-appellees.

Before: MILBURN and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant Leo LaPointe appeals the summary judgment dismissal of his Age Discrimination in Employment Act claim. We reverse and remand for the following reasons.

I.

Plaintiff-appellant Leo LaPointe ("LaPointe") was employed by the Ford Motor

Company ("Ford") in its Parts Depot from 1967 until his retirement on January 1, 1990. While employed by Ford, LaPointe was a member of defendant-appellee United Autoworkers Local 600 ("Local 600"), an amalgamated union whose membership works for several different employers. Consequently, Local 600 is divided into "bargaining units," each representing more than 600 employees governed by elected officers including a chairman, a president, and a vice president.

Each bargaining unit president has the authority to recommend individuals to fill union positions created by the collective bargaining agreement. The recommendation is forwarded to the Local Union's president, then to the regional director of the International Union, then to an International Union vice president who, alone, has the authority to appoint individuals to, or remove individuals from, these positions. The responsibilities of these appointed union positions are governed by the terms of the collective bargaining agreements.

Defendant-appellee Doug Thompson ("Thompson") served as the bargaining unit president for the Parts Depot from 1981 to 1990. In 1988, Thompson recommended that 49–year–old LaPointe be named the bargaining unit's Health and Safety Representative. The International Union accepted Thompson's recommendation and formally appointed LaPointe to the Health and Safety Representative position in February, 1988. LaPointe continued to be employed by Ford during his tenure as the bargaining unit's Health and Safety Representative.

LaPointe contends that soon after his union appointment he became the target of Thompson's ridicule and harassment. On November 29, 1989, LaPointe executed an application for retirement benefits (effective January 1, 1990) pursuant to the Special Early Retirement Opportunities Program negotiated by Ford and the United Autoworkers union.[1] LaPointe's union position was ultimately filled by a 44–year–old individual.

---

**1.** Though the district court noted that "plaintiff could have resigned from his union position but nonetheless retained his job with the Ford Motor Company," District Court's Memorandum Opinion and Order at 2 n. 2, LaPointe maintains that

Thompson threatened that he "would be gone, one way or another, because [Thompson] would still be around." Joint Appendix at 244. Because we cannot say, as a matter of law at summary judgment, that the district court's as-

On April 24, 1990, LaPointe filed an Age Discrimination in Employment Act ("ADEA") charge against Local 600 with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC").[2]  On May 30, 1990, LaPointe filed a four-count complaint in Wayne County Circuit Court.  The appellees, relying on federal question jurisdiction, removed the lawsuit to federal court on December 3, 1990.  The district court subsequently remanded Count I (wrongful discharge) and Count IV (intentional infliction of emotional distress and interference with contractual relations) to state court, but retained jurisdiction over Count II (age discrimination) and Count III (breach of the duty of fair representation).  On September 10, 1991, the appellees moved for summary judgment.

The district court granted the appellees' summary judgment motion on February 7, 1992, 782 F.Supp. 347, after determining that: LaPointe had failed to set forth a *prima facie* case of age discrimination; and, LaPointe had failed to exhaust internal union remedies prior to filing his fair representation claim.

LaPointe thereafter filed a timely notice of appeal challenging only the dismissal of his ADEA claim.

## II.

### *Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56.  A district court's grant of summary judgment is reviewed *de novo*.  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).  In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987).

The moving party has the burden of conclusively showing that no genuine issue of material fact exists.  *Id.*  Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *60 Ivy St. Corp.,* 822 F.2d at 1435.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).  The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party.  *60 Ivy St. Corp.,* 822 F.2d at 1435.  If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### *ADEA Claim*

■  Though LaPointe argues on appeal that he "need not show that he was replaced

---

sumption is correct, we reject the notion that LaPointe was not constructively discharged from both Ford and Local 600.

**2.**  On December 18, 1990, the EEOC issued its Determination which held (in relevant part):

The charging party alleges he was harassed by respondent and forced to take an early retirement because of his age, 52, in violation of the ADEA.

The evidence obtained during the investigation reveals that the charging party was appointed by the respondent to the position of Health and Safety Representative in 2/88.  The evidence discloses that the harassment complained of by the charging party was motivated by union politics rather than the age of the charging party.  On 1/1/90, the charging party voluntarily accepted an early retirement offer from the employer, removing him from the union position.  The evidence shows that position was ultimately filled by a 44 year old male.  Based on this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

EEOC Determination at 1.

by someone outside the protected class in order to establish a *prima facie* case of age discrimination," Appellant's Brief at 13, the appellant's contention is belied by established Sixth Circuit precedent:

> The elements of a *prima facie* case of age discrimination require that the charging party demonstrate that (1) she was a member of the protected class, i.e., [at least 40] years of age; (2) that she was subjected to an adverse employment action; (3) that she was qualified for the particular position; and (4) *that she was replaced by a person not a member of the protected class.*

*Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989) (emphasis added). *See also Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991) ("To establish a *prima facie* case under Title VII, a plaintiff must show that he is within a protected class; subject to an adverse employment action; qualified for the job; and replaced by a person outside the protected class."). *But see Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506 (5th Cir. 1988) (though "a *prima facie* case of age discrimination can be constructed where the plaintiff was replaced by a younger worker even if the younger worker is himself within the protected class," the plaintiff must show "that he was replaced by a worker sufficiently younger in the context of his employment to permit an inference of age discrimination"); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 792 (3d Cir.1985) ("[n]o case holds that an ADEA plaintiff can recover only if s/he was replaced by someone younger than 40, and there is no reason to engraft the requirement on to the law"), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986).

If a plaintiff successfully proves a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's discharge." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). "Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence 'that the legitimate reasons offered by the employer were not its true reasons, but were

a pretext for discrimination.' " *Ang v. Procter & Gamble Co.,* 932 F.2d at 548 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

■ LaPointe resigned as the Health and Safety Representative on January 1, 1990, at age 51. On July 5, 1990, defendant-appellee Thompson assumed the Health and Safety Representative position at age 43. On July 1, 1991, Dan Courtney was appointed Health and Safety Representative at age 44. Because the undisputed facts reveal that LaPointe was replaced by individuals *within* the protected age group, LaPointe cannot establish a *prima facie* case of age discrimination under established Sixth Circuit precedent. *See generally United States v. Warren,* 973 F.2d 1304, 1309 (6th Cir.1992) ("One panel of this court cannot overrule the decision of a prior panel of this court.").

■ LaPointe argues, however, that it was not necessary for him to establish a *prima facie* case because he offered direct evidence of age discrimination. "Direct evidence of discrimination allows a plaintiff to proceed without meeting the requirements of a *prima facie* case set forth in *McDonnell Douglas.*" *Ang v. Procter & Gamble Co.,* 932 F.2d at 549; *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–622, 83 L.Ed.2d 523 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). In support of his assertion, LaPointe argues that:

> [he] was told at various times that Mr. Thompson was going to get the older employees out. Mr. Wheeler went through the same experience with Mr. Thompson. Apparently, Wheeler was forced out and replaced by LaPointe temporarily, only so Thompson could reserve the job for someone younger. That is at least Thompson's testimony. The inescapable fact though is that two straight members of a protected class were hounded out of his particular job and replaced by someone younger. Both Wheeler and LaPointe have testified that various ageist comments were made

by Thompson as well as by members of Thompson's caucus.

Appellant's Brief at 16.

■ Though "[c]ase precedent clearly reflects that isolated and ambiguous statements ... are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination," *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d at 314, LaPointe's assertions are corroborated by the deposition testimony of his predecessor as Health and Safety Representative, George Wheeler:

Q. And in the events that happened after Mr. Thompson was elected, what kind of things were happening to you after he took office that you considered to be wrong or harassment, or however you want to phrase it?

A. Well, it just started with guys kicking my office door. Guys screaming in the back about the old man ought to retire.

Q. Do you know which guys?

A. Their voices, yes. They're mostly on the afternoon shift.

Q. Were they Business Agents or just guys from the plant?

A. Well, they were friends of the caucus. Mr. Thompson's caucus. They campaigned for him.

Q. Did you ever see or hear Mr. Thompson say anything to that effect, that the older guys should retire or get out?

A. Yes, he made off the wall remarks continuously about people with thirty years, they ought to get out and let the younger guys—and he made this more than one time.

Q. Did you ever complain to Mr. Thompson about people kicking your door?

A. I told him that—I wanted to get along with him and to get these guys off my

back. Just in general. It wasn't just in the office. They broke into my desk a couple of times. It wasn't just the office. It was smart remarks. I couldn't go down to the bar with anybody, I would hear smart remarks. I couldn't go to the cafeteria, I would hear smart remarks about oldtimers, they got thirty years, they ought to get their ass out of here.

Q. Smart remarks from whom?

A. Mr. Thompson made a few of them.

Joint Appendix at 133–34.

Though it is relevant to LaPointe's age discrimination claim that defendant-appellee Thompson recommended LaPointe's appointment at age 49, *see White v. Mississippi State Oil & Gas Bd.*, 650 F.2d 540, 544 (5th Cir.1981) ("White was 52 when he was hired and 54 when he was fired; the argument that the same Board that would hire a 52–year-old would fire him two years later because of his age is a strained one"), the district court erroneously concluded that this "on its face rebut[ted] any presumption of age discrimination." 782 F.Supp. 347, 350 n. 5.

■ Accordingly, the district court improperly granted the defendants' summary judgment motion after concluding that LaPointe had "failed to set forth a *prima facie* case of age discrimination," 782 F.Supp. at 350, without considering LaPointe's direct evidence of age discrimination.[3]

■ Though the appellees argue that "federal labor law preempts [LaPointe's ADEA] claim because age discrimination is one of the conditions of employment negotiated by the Union and the Company," Appellees' Brief at 12, "the question of whether or not the plaintiff was discriminated against [is] separate from any possible defense the employer might have under the contract.... It is irrelevant to the preemption question wheth-

---

**3.** The district court further held:

For the sake of completeness, this Court notes that in formulating the ADEA, Congress expressly adopted the remedial scheme of the Fair Labor Standards Act ("FLSA") to enforce ADEA's provisions. Unions, or anyone acting in the capacity of officer or agent for such labor organizations, are not liable for monetary damages under the FLSA. Thus, even assuming plaintiff's *prima facie* case was estab-

lished, plaintiff could not recover the relief sought.

782 F.Supp. at 350 n. 6 (citations omitted). The district court failed to acknowledge, however, that unions *are* liable for monetary damages under the FLSA "when acting as an employer." 29 U.S.C. § 203(d). Accordingly, the district court must determine, on remand, whether Local 600 is liable to LaPointe for monetary damages.

er or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did." *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir.1989); *see also Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1482 (6th Cir.1990) ("[A]n inquiry into the conduct of an employee and the motivation of an employer does not necessarily require an interpretation of a labor agreement."). Simply stated, the ADEA action is not preempted by section 301 of the Labor Management Relations Act because "employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language about an employee's rights." *O'Shea v. Detroit News*, 887 F.2d at 687.

## III.

We REVERSE and REMAND to the district court for the aforementioned reasons.

BATCHELDER, Circuit Judge, dissenting.

I respectfully dissent. In my view, it is clear from the plaintiff's own testimony that he could not present any evidence from which a reasonable jury could have found one of the essential elements of his ADEA claim: that he was constructively discharged from his employment at Ford. LaPointe alleged in his complaint, in his opposition to defendants' motion for summary judgment, and in oral argument before this panel that the union forced him to retire from Ford. La-Pointe's counsel agreed at oral argument that LaPointe in fact is claiming that he was constructively discharged by reason of his alleged forced retirement from Ford. La-Pointe does not claim in his complaint, in his opposition to the motion for summary judgment, or in his brief to this Court that he was discriminated against in the terms and conditions of his employment or subjected to a hostile work environment. He does not claim that because of his discriminatory treatment he was forced to resign his Union position and attempted unsuccessfully to return to his job with Ford in the Parts Depot. He claims only that in his full-time Union position as Health and Safety Representative he was treated so badly by the defendants on account of his age that he was forced to take early retirement from Ford, with the necessary result that he relinquished the Union position.

Whether a plaintiff presents a *prima facie* rebuttable presumption of age discrimination under a *McDonnell Douglas* approach or presents a *prima facie* case on the basis of direct evidence of age discrimination, he still must present evidence that because of the claimed discrimination he suffered an adverse employment decision. In order for LaPointe to stave off summary judgment under either theory, he had to present evidence to the district court that there remained a genuine issue of material fact as to whether he was constructively discharged from Ford. For the reasons outlined below, I would find that he failed to do this.

Although the district court did not address the issue of constructive discharge because it stopped its analysis after determining that LaPointe had not made out a *prima facie* case under the *Gagne/McDonnell Douglas* test, "this Court may examine the record and affirm the District Court on other grounds if we determine that there exists no material controversy regarding matters of fact or law." *Hooks v. Hooks*, 771 F.2d 935, 945 (6th Cir.1985). The issue of constructive discharge was clearly raised by the parties in the district court. Plaintiff LaPointe's ADEA claim alleges that he was harassed into retirement because defendants wanted "to get a younger person in as Health and Safety Representative." Defendants moved for summary judgment, claiming that La-Pointe could not establish the elements of a *prima facie* case, one of which, defendants stated, was that plaintiff was forced to retire. Defendants specifically claimed that La-Pointe could not demonstrate that he was forced to retire because the evidence would show that he opted to take retirement. Responding to Defendant's Motion for Summary Judgment, LaPointe claimed that:

In this particular case, a prima facie case would be showing that the Plaintiff is a member of a protected group; *that he was forced to retire;* that he was qualified for the position; and, that he was replaced by

a person outside the protected group. The Defendant does not challenge three of the four alleged requirements. Plaintiff is a member of a protected group and the Defendant is not challenging Plaintiff's argument that he was forced to retire by Doug Thompson's harassment. . . .

(emphasis added)

But in their reply brief, defendants countered:

At the outset it should be noted that Defendants do not concede that Plaintiff was "forced to retire." To the contrary, Defendants' [sic] contend that LaPointe was not forced to retire. Neither was George Wheeler nor Donald Levine. In fact, Plaintiff admitted that he had the option of resigning his Union position and returning to his regular employment. A contrary "personal belief" would be legally insufficient to support an inference of age discrimination.

Similarly, LaPointe's acceptance of the early retirement offer did not constitute age discrimination because he has not shown that he *would have been* fired had he turned down the offer and thus he has failed to show that he was constructively discharged.

[citations to record omitted]

Regardless of whether LaPointe was seeking to make out a *prima facie* case under *McDonnell Douglas,* or was proceeding on the basis of direct evidence of age discrimination, he was required to show at least that there remains a genuine issue as to the adverse employment action which he claims as the injury in this suit. It was incumbent upon LaPointe to respond, or at least to attempt to respond, to the defendants' claim on summary judgment that this essential element of a *prima facie* case was absent by pointing to evidence in the record that would raise a genuine issue of fact as to this element. *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir.1983) (party opposing summary judgment motion must inform trial judge why summary judgment should not be entered). While the defendants in their reply brief pointed to specific evidence in the record demonstrating that plaintiff was not forced to retire, (a burden which the law does not place on the moving party), plaintiff failed to respond with any specific evidence to support his claim.

In addition, although the plaintiff did not address the constructive discharge issue in his brief on appeal, the defendants clearly did address it in their appellate brief, and plaintiff made no effort to respond. And at oral argument this panel addressed the constructive discharge issue with the parties and plaintiff admitted that his claim is that he was forced to retire from Ford and was thus constructively discharged.

A claim of constructive discharge must be decided on the facts of the particular case. *Geisler v. Folsom,* 735 F.2d 991, 996 (6th Cir.1984). Constructive discharge is at least partially a question of law, and therefore we must review it *de novo. Wheeler v. Southland Corp.,* 875 F.2d 1246, 1249 (6th Cir. 1989). A constructive discharge occurs when " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Geisler,* 735 F.2d at 996 (quoting *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982)). Feelings of the employee alone cannot establish a constructive discharge; " 'the constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.' " *Wheeler,* 875 F.2d at 1249 (quoting *Held,* 684 F.2d at 432). A constructive discharge claim exists if the plaintiff shows that "a reasonable employer would have foreseen that a reasonable employee . . . would feel constructively discharged." *Wheeler,* 875 F.2d at 1249.

LaPointe has failed to show that there is a genuine issue of material fact for trial as to his constructive discharge claim. It is undisputed that during the entire time that LaPointe was employed in the Union Health and Safety Representative position he was also employed by Ford. While there is some evidence of age-based discrimination in the record, it is clear from the depositions that all of the alleged harassment and bullying was directed toward getting LaPointe and

other older employees out of their Union positions. For example, LaPointe testified in his deposition that Thompson verbally harassed him in the course of LaPointe's duties as Health and Safety Representative by stating that "old guys" needed to retire to make room for younger employees and calling him age-related names; cut his overtime and attempted to move him from the Health and Safety Representative position to special assignment; continually requested that he retire; told LaPointe that he wanted to see LaPointe's name on a list of persons requesting early retirement information; told others, after LaPointe signed up on this list, that LaPointe was retiring; and told LaPointe that if he left the Union position and went back to his Ford job, he would have him fired from that position, too. George Wheeler, the predecessor to LaPointe, also stated in his deposition that Thompson harassed him and made remarks that employees with thirty years of experience should retire.

Defendant Thompson, in his deposition, denied ever having made age-related remarks or telling LaPointe or Wheeler to retire, maintaining that any decisions he made in relation to the Health and Safety Representative were either on the merits or for purely political reasons. Thus it is clear that there is a genuine issue of material fact as to whether LaPointe was constructively discharged *from the Union position.* However, LaPointe wholly failed to show a genuine issue of fact as to whether Thompson or anyone else constructively discharged him *from his job at Ford in the Parts Depot.* This court has held that a determination of constructive discharge requires "an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee," to the end that "the feelings of the employee would not be enough to show discharge without at least some foreseeability on the part of the employer." *Wheeler,* 875 F.2d at 1249 (quoting *Yates v. Avco Corp,* 819 F.2d 630, 636–37 (6th Cir.1987)). We have also held that the presentation to an employee of other legitimate options for continued employment with the company precludes a finding of constructive discharge, quoting the Eleventh Circuit's language in *Garner v. Wal–Mart Stores, Inc.,*

807 F.2d 1536, 1539 (11th Cir.1987), that "the employee has 'an obligation not to assume the worst, and not to jump to conclusions too fast.' " *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (6th Cir.1991). Finally, in an unpublished opinion citing *Wilson, Garner* and *Wheeler,* we held that "[w]here, as here, an employee fails to even attempt a reassignment or new position offered to improve a troubling situation, a court may find against constructive discharge." *Cleverly v. Digital Equipment Corp.,* 978 F.2d 1258 (6th Cir.1992).

The majority makes no mention whatsoever of LaPointe's burden of showing, as part of his direct evidence case, an adverse employment action, except (in a footnote) to "reject the notion that LaPointe was not constructively discharged from both Ford and Local 600," because "we cannot say, as a matter of law at summary judgment that the district court's assumption [that LaPointe could have returned to his job at Ford after resigning his Union position] is correct." But LaPointe's constructive discharge *from Ford* is an essential element of his ADEA claim; it was not the defendants' burden to produce any evidence on this issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (Where the plaintiff fails to put forth an essential element of his cause, the court must enter summary judgment as a matter of law). It is undisputed that at all times during his full-time employment as the bargaining unit's Health and Safety Representative, LaPointe continued as an employee of Ford, as the majority opinion acknowledges. LaPointe claims that these defendants forced him to retire from employment with Ford. It was therefore LaPointe's burden to produce *some evidence* in the record that he was forced to retire from Ford. If this court requires that a plaintiff who claims that his sole employer constructively discharged him must provide evidence from which a jury could find that the employer intended, or at least should have foreseen, that the employee would feel compelled to resign, and requires that the presence of other legitimate employment options with that employer will preclude a finding of constructive discharge, and requires

that a reasonable employee has a duty not to assume the worst and jump to conclusions too fast, how much more should this court require those things where the plaintiff claims constructive discharge from employment with one employer by reason of actions of a different employer? At the very least, I would hold that LaPointe, in order to avoid summary judgment, was required to present some actual evidence from which a jury could have found that the defendants in this case in fact could have influenced his continued employment with Ford.

LaPointe, however, not only failed to produce any evidence whatever in support of his claim that he was constructively discharged from Ford; in fact, his own testimony contradicts his claim. As the Union Health and Safety Representative, LaPointe continued to be paid by Ford and remained a Ford employee. LaPointe admitted in his deposition that he could have retired from the union position and gone back to his job at Ford. He did not show that a reasonable person would have felt compelled to resign from both the union position and from the Ford position. It is true that LaPointe stated several times throughout his deposition that Thompson told him that "one way or another" he would see that LaPointe was fired from Ford if he returned there. However, the following statements in LaPointe's deposition indicate that LaPointe knew, and a reasonable person would have known, that in fact Thompson could not have had him fired from Ford:

LaPointe: ... I didn't know what was happening or what was going to happen to me, because I had been threatened that if I went back out on the floor, I'd lose that job out there too, one way or another and I'd lose, I'd lose the Health and Safety job.

So I just, I thought I'd better get out of there to get some help otherwise.

Question: Isn't it true that you would have had more protection if you had gone back to your job on the floor?

LaPointe: I would have been under the same—right back under the same President, Mr. Thompson or Dan Gillis.

Question: Isn't it true that you would not have been working for either Doug Thompson or Dan Gillis, you would have been working for a Ford foreman wouldn't you?

LaPointe: No, but they would have been my union representatives.

Question: Wouldn't you have been working for a Ford Motor Company foreman?

LaPointe: Yes.

Question: And foremen are not a member of the union, are they?

LaPointe: No.

Question: They're not a part of Thompson's Caucus, are they?

LaPointe: No.

Question: They don't report to Thompson, do they?

LaPointe: Hmmph; not that I know of. Obviously, LaPointe knew that if he returned to Ford he would be under the supervision of a Ford foreman, and not Thompson.

Although LaPointe contends that Thompson told him that he would have him fired if he returned to the Ford job, a reasonable person would not have believed that Thompson had any control over firings at Ford. In addition, although LaPointe stated that he was told by several union officials that Thompson "could do whatever he wanted to do," LaPointe does not contend that these union officials were referring to Thompson's ability to have LaPointe fired from Ford altogether; rather, they were referring to Thompson's Union decisions. Neither did LaPointe present any evidence that he attempted to determine from anyone at Ford whether Thompson could make good on this threat. Thus, although LaPointe presented evidence from which a jury could have found that Thompson treated him in such a reprehensible fashion that a reasonable person would have been compelled to retire from the Union position, LaPointe presented no evidence that a reasonable person also would have felt compelled to retire from the Ford position. When LaPointe filled out the retirement forms in November of 1988 and retired from Ford effective January 1, 1989, he waived his opportunity to claim that he was constructively discharged from both positions. It was because LaPointe retired from Ford that he was required to retire

385

from the Union position. Had LaPointe resigned his Union position but retained his position at Ford, he might have been able to prevail on a claim of age discrimination against Thompson and the Union for constructive discharge from the Union position. And if Thompson subsequently had forced him to retire from Ford, LaPointe might have been able to prevail on a similar claim of constructive discharge from Ford. But LaPointe never attempted to continue in his employment with Ford. He has presented no evidence whatever that Ford intended that he should, or even had any inkling that he might feel compelled to retire from his employment with Ford. The actions of the Union did not entitle LaPointe to "assume the worst" and jump to the conclusion that Ford would discharge him at the urging of Thompson or permit him to be hounded out of his employment with Ford by these defendants.

Accordingly, I would affirm summary judgment for defendants-appellees, although on grounds other than those stated by the district court. Under either a *McDonnell Douglas* inference of age discrimination or the direct evidence method of proving age discrimination, LaPointe failed to make out a *prima facie* case because he failed to show he was subjected to an adverse employment decision. Therefore, I would hold that he cannot prevail on his challenge to the summary judgment.