Janice BEST, Plaintiff,

v.

**BLOUNT MEMORIAL HOSPITAL, Defendant.**

No. 3:00–CV–416.

United States District Court, E.D. Tennessee, at Knoxville.

Dec. 14, 2001.

David A. Burkhalter, II, Ronald A. Rayson, Kirk J. Angel, Burkhalter, Rayson & Associates, Knoxville, TN, for Janice Best, Mary P. Kilgore.

Mary M. Helms, William R. Seale, Wimberly, Lawson & Seale, PLLC, Morristown, TN, for Blount Memorial Hospital.

## MEMORANDUM

COLLIER, District Judge.

Plaintiff Janice Best brings this age discrimination action against her former employer, Defendant Blount Memorial Hospital ("Blount"), alleging she was demoted and then discharged in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 *et seq.* Before the Court is Defendant's motion for summary judgment (Court File No. 20). In disposing of this motion, the Court has considered Defendant's supporting memorandum (Court File No. 21), Plaintiff's response (Court File Nos. 22–23), and Defendant's reply (Court File No. 25). For the following reasons, the Court will **GRANT in part** and **DENY in part** Defendant's motion.

## I. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347

(6th Cir.1994); *Kentucky Div., Horsemen's Benevolent & Prot. Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.,* 20 F.3d 1406, 1411 (6th Cir.1994). The Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oakland Gin Co. v. Marlow,* 44 F.3d 426, 429 (6th Cir.1995); *City Mgmt. Corp. v. U.S. Chem. Co.,* 43 F.3d 244, 250 (6th Cir.1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benevolent,* 20 F.3d at 1411; *see also Guarino v. Brookfield Township Trs.,* 980 F.2d 399, 404–06 (6th Cir.1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper question for the jury but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36

(6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benevolent,* 20 F.3d at 1411.

## II. *RELEVANT FACTS*

Janice Best was born on July 16, 1939 (Court File No. 20, Exh. A, Deposition of Plaintiff ("Best Dep. I"), at 11–12.). On October 12, 1960, after graduating from nursing school, she began working for Blount Memorial Hospital in Maryville, Tennessee (*Id.* at 14).[1]

From about 1972 until 1995, Best worked in Blount's operating room (Court File No. 23, Exh. Marked "Best," Deposition of Plaintiff ("Best Dep. II"), at 38). For most of her tenure, Best served as the supervisor of the operating room (*Id.*). She also served as the department head of the operating room for about ten years but later returned to her previous supervisory position (*Id.*). In 1995, Best voluntarily left the operating room to become the supervisor of the sterile processing department (*Id.* at 148). In her new position, Best was responsible for receiving, cataloging, and sterilizing instruments used in surgery. Best occasionally returned to the operating room to help during busy peri-

---

1. Best's Response states she was first hired by Blount on January 1, 1961 (Court File No. 23, at 2). Because the Response fails to support this assertion, the Court will assume Best's own deposition testimony is accurate.

ods (*Id.* at 149). While working in the sterile processing department, Best reported to Carolyn Phillips, the hospital's director of surgical services (*Id.* at 104). Phillips reported to Dr. Samuel Evans, the hospital's medical director (*Id.*).

On July 9, 1999, Evans and Phillips informed Best they intended to eliminate the position she held (Best Dep. II at 108). Evans stated the decision to eliminate Best's position was solely based on considerations of efficiency, streamlining, and declining surgery volume at the hospital (Evans Dep. at 55).[2] According to Evans, the hospital intended to reassign her duties to the supervisor of the operating room, Janis Braden (Court File No. 23, Exh. Marked Evans, Deposition of Samuel G. Evans ("Evans Dep."), at 57).[3] Evans offered Best a nursing position in the recovery room or in home health care services (*Id.* at 51; Best Dep. II at 108, 111; Court File No. 20, Exh. Marked Phillips, Deposition of Carolyn Phillips ("Phillips Dep."), at 23–24). Evans explained Best's compensation would not change but that, because she received a salary, she would not be eligible for overtime compensation (Best Dep. II at 108). Angered, Best accused Evans and Phillips of "being unfair" and stated she felt they were discriminating against her because of her age (*Id.* at 110–11). Evans and Phillips did not respond to Best's accusation (*Id.* at 34–35, 110).

After the meeting, Best returned to her office and entered some data into the hospital's computer system (Best Dep. II at 111–12). Shortly thereafter, she left a message for Evans, informing him she would accept the nursing position in the recovery room (*Id.* at 112). She also saw Phillips but said she did not wish to speak with her (*Id.*).

Best then proceeded to clean out her office, clearing shelves and desk drawers of paperwork, manuals, and employee and patient files, as well as medical supplies, including "stuff for bio-med" and "sharps" (*i.e.*, blades or needles) (Best Dep. II at 112–25). According to her deposition testimony, she stacked files and paperwork to be kept on the floor (*Id.* at 116). She placed obsolete files, manuals, and paperwork, as well as some unusable instruments and equipment in bags to be discarded (*Id.* at 117, 123–25). She also placed various manuals, instruments, and sharps in two other bags, intending to send the items to the hospital's bio-med department (*Id.* at 118, 125). The five or six bags she used were identical clear or translucent garbage bags (*Id.* at 115, 127). She acknowledges she did not use a designated container to dispose of the sharps, as required by both OSHA regulations and hospital rules (Best Dep. I at 63–64, 143). She also acknowledges she did not mark the bags in any way, although she states she placed the bags in different parts of her office according to their contents (*Id.* at 61–62, 127–28).

Best says she then attempted to call Bill Manning in the hospital's maintenance department to arrange for the bags in her office to be "picked up" (Best Dep. II at 129–31). The maintenance department is responsible for handling both trash and bio-med materials (*Id.* at 129). Best was not able to speak with Manning, however, and instead left a message for him with a secretary (*Id.*). She did not tell the secretary she had sorted the bags according to content or that some of the bags contained bio-med materials (*Id.* at 130–31).

---

**2.** Best subsequently acknowledged Blount had been looking for ways to save expenses due to budgetary constraints (Best Dep. I at 187).

**3.** Best admits Janis Braden is "in her forties" (Best Dep. I at 148).

Best then left her office to help with something in the emergency room (Best Dep. II at 131). When she returned, she noticed the bags and piles of papers that had been in her office were gone (*Id.* at 135).[4] She states she did not attempt to find out what had happened to any of the papers or bags that had been removed or what had become of the bio-med materials (*Id.* at 135, 220). In retrospect, Best said, "I wish I had" (*Id.* at 136). She then entered the data pertaining to the work she had just done in the emergency room into the computer system and left the hospital (*Id.* at 132, 135).

Later that afternoon, the bags and papers were retrieved from a dumpster and inventoried. According to Phillips, the recovered items included confidential patient information, employee education records, vendor information, equipment manuals, four sharps, and $2000 worth of usable supplies[5] (Phillips Dep. 38, 54, 57; Court File No. 20, Exh. C, Affidavit of Carolyn Phillips ("Phillips Aff."), ¶ 6 & Exh. 1). Phillips also concluded Best had deleted numerous files from the hospital's computer system (Phillips Dep. at 38–45; Phillips Aff. ¶ 5).[6] When the hospital staff determined the extent of the supplies that had been thrown away and the computer files that had been deleted, Best was suspended (Evans. Dep. at 30–31, 36).

On July 13, 1999, Best met with Evans and Karen Moore, a hospital administrator (Best Dep. at 223). According to Evans, Best stated she intended to discard only those instruments that "needed to be thrown out" because "they were no good" (Evans Dep. at 107). Best subsequently denied she improperly deleted any computer data or intentionally discarded any employee, patient, or equipment information (Best Dep. II at 132). However, Best acknowledged she did not handle some sharps in accordance with hospital rules (*Id.* at 142–3). In answering hypothetical questions during her deposition, Best admitted the improper deletion of computer data would violate hospital policy (*Id.* at 139). She also acknowledged that, if she had thrown away some of the items found in the dumpster, she would have violated hospital policy (*Id.* at 137).

Both Evans and Phillips acknowledged Best had authority to discard trash and medical instruments that were unfit to be repaired and reused (Evans Dep. at 82–83; Phillips Dep. at 46). Phillips also admitted Best had authority to delete computer files as required by her position (Phillips Dep. at 45). Several employees testified staff members who violated the hospital's sharps disposal policy were "written up," if anything, but were never terminated (Phillips Dep. at 58–59; Court File No. 23, Exh.

4. The testimony of Sam Bryant, a maintenance worker; Mary Ellis, a staff member; and Kecia Queener, another staff member, directly contradict Best on this point. Bryant states Best was present when he removed the bags from her office (Court File No. 25, Exh. 6, Deposition of Sam Bryant, at 12, 14). Ellis states the same thing (Court File No. 25, Exh. 7, Deposition of Mary Ellis, at 12). So does Queener (Court File No. 25, Exh. 1, Deposition of Kecia Queener, at 21). Because credibility must not be weighed at the summary judgment stage, the Court will presume for present purposes Best's version is accurate.

5. The supplies included PAS tubing, air filters for exchange system, PCA pump tag hangers, PCA keys, fiberoptic light cable, sigmoidoscope cord, laparoscopic spatulas, laparoscopic grasper, pin cutter, reamer, scissors, label tape, laryngoscope, laryngoscope blades, ear suctions, welch bulbs, eye forceps, eye hook, and otoscope handle (Phillips Aff., Exh.).

6. One of Best's coworkers, Kecia Queener, states she saw Best deleting files from her computer (Court File No. 21, Exh. E, Affidavit of Kecia Queener). Phillips testified some computer data was missing but later was recovered (Phillips Dep. at 52).

Marked Ellis, Deposition of Mary Ellis ("Ellis Dep."), at 11; Court File No. 23, Exh. Marked Hill, Deposition of Joe Hill ("Hill Dep."), at 36). According to Best, moreover, the hospital's computer system was unstable and spontaneously deleted data (Best Dep. II at 133). In any event, the hospital recovered the lost data files (Phillips Dep. at 52).

On July 14, 1999, Blount terminated Best's employment (Court File No. 1, ¶ 8). As cause, Blount stated Best had violated numerous hospital policies, including the destruction of hospital property, improper disposal of hospital property in violation of OSHA regulations, improper disposal of confidential employee and patient-related information, and deletion of computer files (Court File No. 20, Exh. B, Affidavit of Joe Hill ("Hill Aff."), ¶ 4; Exh. C, Affidavit of Carolyn Phillips ("Phillips Aff.") ¶¶ 5–6). Referring to a conversation with Phillips and Hill, Evans stated,

> We discussed the issues that we had found out about what had taken place in sterile processing and the seriousness of what had taken place and the problems it caused for the staff to continue working in that area efficiently and we felt that this was a very serious violation of Hospital policies and that we had no alternative but to proceed to termination.

(Evans Dep. at 26–27). Evans also stated Best was ultimately responsible for the instruments she placed in the garbage bags, regardless of whether she intended for the bags to be thrown away or not: "I think her responsibility is those instruments. There should be no mistakes in how the instruments are disposed of" (*Id.* at 101–02). According to Evans, Best's mishandling of the instruments, alone, merited her dismissal (*Id.* at 102).

Although Best states she had not faced age-related discrimination prior to her dismissal, she alleges both Evans and Phillips had made comments indicating age bias earlier in 1999. On one occasion Evans allegedly stated, "old nurses are the cause of the problems because they don't want to accept changes" (Best Dep. II at 145). In May 1999, after an older physician retired, Evans allegedly stated, "[N]ow we're rid of the old surgeons and we'll start getting some new patients and then we need to start working on the old nurses. We need to hire some young, pretty nurses at less pay and start replacing the old, outspoken nurses that complain all the time" (*Id.* at 145–46). On another occasion in May 1999, Evans allegedly told Best her "worries are going to be the old, outspoken nurses in the department" (*Id.* at 146). On an occasion in March 1999, Phillips allegedly stated, "[T]he old nurses were the cause of the problems because they didn't want to make any changes in the operating room. The old nurses and the old technicians were complaining all the time and were causing problems for the younger employees" (*Id.*). On yet another occasion in May 1999, Phillips allegedly stated, "the old nurses were never happy with anything" and that "the old nurses were the cause of the morale problems in the department" (*Id.*). Blount has cited to no evidence in the record, and the Court has found none on its own, suggesting either Evans or Phillips denied making the alleged remarks. Blount's answer contains such a denial, however (Court File No. 3, at 7 ¶ 19).

### III. DISCUSSION

Best alleges Blount subjected her to two adverse employment decisions—her demotion on July 9, 1999 and her termination on July 14, 1999. She contends both actions violated the ADEA, 29 U.S.C. § 623(a), and the THRA, Tenn.Code Ann. §§ 4–21–301 *et seq.* She further contends her termination violated the anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d),

because it occurred after she had accused Evans and Phillips of demoting her for discriminatory reasons. As an initial matter, the Court notes the Tennessee Supreme Court has repeatedly recognized the application of federal law to THRA cases. *See Carr v. United Parcel Serv.,* 955 S.W.2d 832, 834 (Tenn.1997). Accordingly, the Court will analyze Plaintiffs' claims under the federal law applicable to ADEA cases.

■ Under the ADEA, "[i]t shall be unlawful for an employer (1) ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a). Moreover, under the ADEA, "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section." *Id.* § 623(d). The ADEA protects workers at least forty years of age. *Id.* § 631(a). This protection "broadly prohibits arbitrary discrimination in the work place based on age." *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

## A. Evidentiary Burdens in Age Discrimination Cases

A plaintiff may make out a prima facie case of employment discrimination through either direct or circumstantial evidence of prohibited treatment. *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir.1993) ("Direct evidence of discrimination allows a plaintiff to proceed without meeting the requirements of a prima facie case set forth in *McDonnell Douglas.*"); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 549 (6th Cir.

1991). "The direct evidence and circumstantial paths are mutually exclusive; the plaintiff can meet her burden with either method of proof." *Weberg v. Franks,* 229 F.3d 514, 522–23 (6th Cir.2000). Either way, a "plaintiff's burden with respect to establishing a prima facie case is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 377 (6th Cir.1984) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ Direct evidence of age discrimination in employment "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that for liability to arise, "the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome"). "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986) (citation omitted). Likewise, "[i]solated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Ercegovich v. Goodyear,* 154 F.3d 344, 355 (6th Cir.1998). However, multiple age-related remarks made by decisionmakers, when viewed in context, may constitute direct evidence of age discrimination, even if the comments are not specifically directed at or about the plaintiff. *See id.* at 356–57 (6th Cir.1998) ("[W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view

1042

each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus."); *see also Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1331 (6th Cir.1994); *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir.1993).

■ To make out a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protect activity; (2) the defendant knew of her protected activity; (3) the defendant took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County,* 201 F.3d 784, 792 (6th Cir.2000). As with other cases of discrimination, evidence that unlawful discrimination was at least a motivating factor in the employer's retaliatory action constitutes direct evidence of a causal connection between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990). Once a plaintiff makes out a prima facie case of retaliation, her retaliation claim is treated like any other claim of discrimination in employment. *See Morris,* 201 F.3d at 792–93.

If the plaintiff produces sufficient direct evidence to support an inference of discrimination or retaliation, "[t]he burden of persuasion then shifts to the defendant to show that it would have terminated the plaintiff's employment absent the discriminatory motive." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *LaPointe,* 8 F.3d at 379. The defendant's burden to articulate some legitimate, nondiscriminatory reason for its decision is relatively slight. *See Ang,* 932 F.2d at 548–49. In considering whether an employer's reason is legitimate, a court must bear in mind the

ADEA prohibits employers from making business decisions for discriminatory reasons but does not require them to make sound business decisions. *See id.* at 549 ("The aim [of the ADEA] is not to review bad business decisions, or question the soundness of an employer's judgment."); *Wilkins v. Eaton Corp.,* 790 F.2d 515, 521 (6th Cir.1986) ("The factfinder may not focus on the soundness of the employer's business judgment, since the ADEA was only intended 'to protect the older worker from arbitrary classifications on the basis of age.' ").

■ Once the employer carries its burden, the inference of discrimination drops from the case and "the burden shifts back to the plaintiff to prove by a preponderance of the evidence 'that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination.' " *Ang,* 932 F.2d at 548 (quoting *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000).

The first type of rebuttal ... consists of evidence that the reasons given by the employer simply did not happen. The third type, "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." The first and third types of rebuttals ... "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and, if shown, provide an evidentiary basis for what the Supreme Court has termed a 'suspi-

cion of mendacity.'" It is thus clear, in light of *Reeves* and *St. Mary's Honor Center* [*v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)], as well as our opinion in *Manzer*, that whether the plaintiff has in fact presented evidence supporting each element of her prima facie case is material to the determination of whether she has demonstrated that the employer's articulated reason for the discharge is not credible.

*Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595, 600 (6th Cir.2001) (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)); *see also Kovacevich v. Kent State Univ.*, 224 F.3d 806, 825, 827 (6th Cir.2000) ("Of course, evidence that bears upon elements of the prima facie case can also come into play in assessing the ultimate question of discrimination."). In other words, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Gray*, 263 F.3d at 600. However, "[w]here two or more alternative and independent legitimate, nondiscriminatory reasons are articulated by the defendant employer, the falsity or incorrectness of one may not impeach the credibility of the remaining articulated reason(s)." *Sims v. Cleland*, 813 F.2d 790, 793 (6th Cir.1987), *cited in Cooley*, 25 F.3d at 1329.

**B. Plaintiff's Evidence of Discrimination and/or Retaliation**

■ Best contends she need not establish her prima facie case by using circumstantial evidence because she has direct evidence of age discrimination. In particular, Best asserts various age-related comments allegedly made to her by her supervisors, Evans and Phillips, constitute direct evidence of their improperly discriminatory motives. Blount does not deny Evans and Phillips made the remarks about replacing older nurses. Nor is there any dispute the remarks were made about two months prior to Best's discharge. Based on *Ercegovich* and *LaPointe*, and viewing the evidence in the light most favorable to her, the Court finds Best can satisfy her relatively slight initial evidentiary burden.

■ Best likewise can make out a prima facie case of retaliation. Her accusation of discrimination at the July 9, 1999 meeting constitutes protected activity. Because they were at the meeting, Evans and Phillips knew about her accusation. Best's termination a few days later unquestionably constitutes an adverse employment action. As before, Evans's and Phillips's alleged age-related comments support an inference of a causal connection between her accusation and discharge. Accordingly, the Court finds Best can satisfy her relatively slight initial evidentiary burden as to her retaliation claim.

■ Blount asserts it had legitimate reasons for its employment decisions. It contends the decision to eliminate Best's position in the sterile processing department was based solely on the hospital's staffing needs. Blount further contends the decision to terminate Best was based on her violation of numerous hospital policies, including the destruction of hospital property, the improper disposal of hospital property in violation of OSHA regulations, the improper disposal of confidential employee and patient-related information, and the deletion of computer files. The Court finds Blount's proffered reasons satisfy its relatively slight burden to articulate some legitimate, nondiscriminatory reason for its discharge of Best.

■ Best contends Blount's proffered reason for the elimination of her position was pretextual. Because she does not dispute the hospital had been under budgetary constraints for several years, she cannot argue the financial explanation

had no basis in fact. Likewise, Best offers no evidence financial considerations provide an insufficient basis on which to make a staffing decision. Hence, Best attempts to rebut Blount's proffered reason by showing the hospital's financial condition did not actually motivate the decision to eliminate her position. As proof, Best states Evans and Phillips decided to assign her former duties to the supervisor of the operating room instead of assigning the duties of the supervisor of the operating room to her. This argument is unpersuasive. Even though Best had held the operating room position prior to transferring into the eliminated position, the ADEA does not allow a factfinder to second guess the hospital's business judgment about which position to eliminate. In any event, Blount was not obligated to displace the supervisor of the operating room in order to avoid displacing Best. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309 (6th Cir.2001) ("The right to be treated similarly to other employees . . . is totally different from a freestanding right to be considered for transfer."). Moreover, Evans offered Best other nursing positions with no change in salary. Accordingly, the Court finds Best has offered insufficient probative evidence from which the jury could reasonably find Blount's reason for eliminating her position was pretextual. For these same reasons, the Court finds Blount's articulated reasons sufficiently rebut Plaintiff's direct evidence theory, and that Blount would have made the same decision even in the absence of the discriminatory motive.

 Best also contends Blount's proffered reason for her termination was pretextual. Because she offers no evidence the items she bagged or stacked in her office, including the instruments and sharps, were not found in the hospital's dumpster or that files had not somehow been deleted from the hospital's computer system, she cannot argue the hospital's explanation for her termination had no basis in fact. However, Best offers probative evidence suggesting Blount's accusations about her destruction of hospital property, improper disposal of hospital property in violation of OSHA regulations, and improper disposal of confidential employee and patient-related information, and deletion of computer files provide an insufficient basis on which to take any disciplinary action. In particular, the record indicates Best had authority to dispose of unusable instruments and, thus, necessarily had the authority to determine whether a given instrument was unusable. Likewise, the testimony of other employees indicates the hospital had never terminated someone for improperly disposing of sharps. Best also testified she did not throw away all the paperwork and that the hospital's computer system spontaneously deleted files.[7] According to *Gray*, because Best has offered probative evidence tending to undermine the credibility of Blount's proffered reason for her termination, she may rely on her direct evidence of Evans's and Phillips's age-related comments to attack Blount's motivation. Because motivation should be determined by a jury, the Court finds Best has offered sufficient probative evidence from which the jury could reasonably find Blount's reason for discharging her was pretextual. If nothing else, the Court finds questions of credibility and fact remain to be determined.

## C. Blount's Liability under the Governmental Tort Liability Act

 This Court has previously held Tennessee's Governmental Tort Liability

---

**7.** As noted above, the Court will not consider the hospital's allegation Best had deleted computer files. Although it appears the hospital believed in good faith the files had been deleted and based its decision on that assumption, the files were eventually retrieved.

Act, Tenn.Code Ann. §§ 29–20–101 *et seq.*, does not shield covered entities from liability based on age discrimination. *See Rooks v. Chattanooga Elec. Power Bd.*, 738 F.Supp. 1163 (E.D.Tenn.1990). The parties agree Blount is a covered entity. Accordingly, the Court finds any award for damages in this case will not be capped by the Act.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT in part** and **DENY in part** Defendant's motion for summary judgment (Court File No. 20). The Court will **GRANT** the motion to the extent it seeks to prevent Plaintiff from proceeding with her discrimination claim based on her demotion. The Court will **DENY** the motion to the extent it seeks to prevent Plaintiff from proceeding with her discrimination/retaliation claim based on her termination. The Court will also **DENY** the motion to the extent it seeks to limit Defendant's potential liability under the Governmental Tort Liability Act, Tenn.Code Ann. §§ 29–20–101 *et seq.*