In re Petition of KYU–BYUNG HWANG, as Court Appointed Receiver of Onse Telecom, Debtor in Foreign Proceedings.

No. 03–17371(BRL).

United States Bankruptcy Court, S.D. New York.

March 2, 2004.

Yi Tuan & Brunstein, by Michael M. Yi, New York City, for Petitioner.

Lovells, by Marc J. Gottridge, New York City, for Petitioner.

Buchanan Ingersoll PC, by David J. Molton, Susan P. Persichilli, New York City, for Oxyn Telecommunications, Inc.

## MEMORANDUM DECISION GRANTING PERMANENT INJUNCTION

BURTON R. LIFLAND, Bankruptcy Judge.

Kyu–Byung Hwang (the "Petitioner"), as the Court Appointed Receiver of Onse Telecom ("Onse"), seeks the entry of a permanent injunction pursuant to section 304(b)(1) and (3) of title 11, United States Code (the "Bankruptcy Code"). Oxyn Telecommunications, Inc. ("Oxyn") objects to the request for a permanent injunction to the extent the Petitioners seek to enjoin an action commenced by Oxyn against Onse in the United States.

## Background

Onse is a corporation organized and existing under the laws of the Republic of Korea, where it maintains its principal place of business and substantially all of its assets. Since May 9, 2003, Onse has been a debtor in a corporate reorganization proceeding (the "Korean Proceeding") pending in the Suwon District Court of the Republic of Korea (the "Korean Court") under the Korean Company Reorganization Act (the "CRA").

On May 9, 2003, the Korean Court appointed the Petitioner as Receiver of Onse and issued an order that, among other things, stayed all litigation in Korea against Onse. A total of 770 persons filed claims against Onse in the Korean Proceeding. All but 47 of the claimants are domiciled in Korea. Nine claim holders are located in the United States. On December 1, 2003 the Korean Court approved Onse's plan of reorganization (the "Reorganization Plan").

## The Oxyn Action

Oxyn has an action pending against Onse in the United States District Court for the Southern District of New York (the "Oxyn Action"). The Oxyn Action arises out of an alleged agreement (the "Agreement") between Onse and Oxyn concerning a proposed investment by Onse in Oxyn.[1] At the time the Korean Proceeding was commenced, substantive motions in the

---

1. The Agreement, entitled "Agreement Between Oxyn Telecommunications, Inc. and Onse Telecom" dated November 10, 2000 (the "Agreement") concerned a proposed $15,000,000 investment by Onse in Oxyn (including an initial $4,000,000 deposit) in exchange for a "percentage of all of the issued and outstanding shares of Oxyn, which percentage is yet to be agreed upon" and which remained to be "negotiated and finalized in a formal agreement" between the parties. The Agreement also provided for the exchange of certain telecommunications traffic (referred to as "traffic trading") between Oxyn and Onse. In the Second Amended Complaint, Oxyn asserted claims against Onse for alleged: (1) breach of the November 10 Agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of an alleged duty to negotiate in good faith under the Agreement; (4) breach of a separate Non-Disclosure Agreement with respect to certain alleged disclosures to unrelated co-defendants (the "Hyundai Defendants"); (5) breach of the Non-Disclosure Agreement with respect to certain alleged disclosures to an Onse subsidiary; (6) tortious interference with Oxyn's contractual relations with Dacom Corporation ("Dacom"), a Korean telecommunica-

Oxyn Action had been filed including: (I) Onse's motion for summary judgment dismissing the Oxyn Action as against it, and (ii) Oxyn's motion for partial summary judgment against Onse.[2]

The parties argued the motions in July and, on September 30, 2003, Honorable John S. Martin, Jr., United States District Judge, Southern District of New York, rendered an Opinion and Order which disposed of the motions by *granting* Onse's motion for summary judgment except as to one branch of the claim for breach of the Agreement and denying Oxyn's motion for partial summary·judgment in its entirety. Since rendering his Opinion and Order, Judge Martin has retired from the bench and the District Court twice reassigned the Oxyn Action.

On October 21, 2003, Oxyn filed a motion for reconsideration and reargument of Judge Martin's Opinion and Order. On November 14, 2003, the Oxyn Action was reassigned to the Honorable P. Kevin Castel, United States District Judge. On December 1, 2003, Judge Castel issued an order denying Oxyn's motion for reconsideration and reargument in its entirety. No trial or other proceedings have been scheduled in the Oxyn Action.

### Oxyn's Pursuit of Its Claim in the Korean Proceeding

On June 13, 2003, Oxyn filed a claim for $260 million against Onse in the Korean Proceeding pursuant to the CRA, attaching as exhibits the complaint and selected papers from the summary judgment motion in the Oxyn Action. On June 26, 2003, Oxyn amended its claim in the Korean Proceeding, reducing the amount sought to $101 million.

On July 28, 2003, the Petitioner as Receiver objected to Oxyn's amended claim in the Korean Proceeding. On August 19, 2003, pursuant to Article 147 of the CRA, Oxyn filed a petition in the Korean Court seeking a judicial determination establishing the validity and amount of its claim.[3] This litigation is currently pending in the Korean Court. Four Korean claimants, whose claims were also objected to by the Receiver, have filed similar petitions in the Korean Court. Under Korean law, such litigation will result in final judgments (subject to appeal) of the Korean Court as to the validity and amounts of claims against the estate; such judgments are binding on the Receiver and on all creditors and other interested parties in the Korean Proceeding.

### Motion for Permanent Injunction

By this motion (the "Motion"), the Petitioner requests that this Court issue an order permanently enjoining: (i) the commencement or continuation of any civil action or proceeding in the United States

---

tions carrier that competes with Onse; (7) tortious interference with Oxyn's prospective economic advantage; (8) prima facie tort; (9) fraud with respect to certain matters relating to Dacom; (10) fraud with respect to the appointment of one of the Hyundai Defendants as Onse's agent or representative; (11) civil conspiracy; (12) contractual liability for attorney's fees and costs with respect to the alleged breaches of the Non–Disclosure Agreement relating to certain alleged disclosures by Onse to the Hyundai Defendants; (13) contractual liability for attorney's fees and costs with respect to the alleged breaches

of the Non–Disclosure Agreement relating to certain alleged disclosures by Onse to Onse's subsidiary; and (14) injunctive relief.

**2.** The Hyundai Defendants' in the Oxyn Action moved successfully before Judge Martin to have the Oxyn Action dismissed as against them.

**3.** Oxyn was required to take action in the Korean proceeding to prevent it from being barred from proceeding against Onse in Korea where most of Onse's assets are located.

against Onse or involving Onse or its property, including without limitation the Oxyn Action; and (ii) the enforcement of any judicial, administrative, arbitral or regulatory judgment, assessment or order or any arbitration award, and the commencement or continuation of any judicial, administrative, arbitration or regulatory proceeding to create, perfect or enforce any lien, setoff or other claim against Onse in the United States.

Oxyn objects to the request for a permanent injunction to the extent the Petitioner seeks to enjoin the liquidation of Oxyn's claims against Onse in the Oxyn Action. Oxyn contends that Onse's estate will best be served by allowing Oxyn to proceed with the Oxyn Action in the Southern District of New York for the sole and limited purpose of establishing the validity of and liquidating Oxyn's claims against Onse in that court. A full evidentiary hearing on the injunction request was held on February 23, 2004, and a substantial record was developed. At the hearing, this court received proffered evidence and live witness testimony including that of the Korean Receiver and Korean counsel for both parties.

**Discussion**

■ Section 304(a) allows a foreign representative, such as a liquidator in a foreign insolvency proceeding, to institute an ancillary proceeding in the United States to obtain, *inter alia,* an injunction prohibiting suits or enforcement of judgments against the debtor or its property or "other appropriate relief." *See* 11 U.S.C. § 304(b)(1)(A), (B) and (b)(3). These remedies are intended to ensure the economical and expeditious administration of the foreign debtor's estate. *Bank of New York v. Treco (In re Treco),* 240 F.3d 148 (2d Cir.2001); *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 348 (2d Cir. 1992).

There is no dispute that Onse is the subject of a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code, in that the Korean Proceeding is a proceeding "in a foreign country in which the debtor's domicile, ... place of business or principal assets were located at the commencement of such proceeding, for the purpose of ... effecting a reorganization" of the debtor; and (b) the Petitioner is clearly a "foreign representative" within the meaning of Section 101(24) in that he is the "duly selected ... representative of an estate in a foreign proceeding."

■ In determining whether to grant relief under section 304(b), the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with:

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c). "[C]omity is the ultimate consideration in determining whether to provide relief under § 304." *In re Treco,* 240 F.3d at 156; *see also In re Axona Int'l Credit & Commerce Ltd.,* 88 B.R. 597, 608 (Bankr.S.D.N.Y.1988), *aff'd,* 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed,* 924

F.2d 31 (2d Cir.1991); *In re Culmer*, 25 B.R. 621, 632 (Bankr.S.D.N.Y.1982).

The record confirms that Korean bankruptcy law, and in particular the Company Reorganization Act, is substantially similar to United States law, does not discriminate against non-Korean creditors, and comports with American notions of fairness and due process. The Korean Proceeding provides many of the same procedural safeguards as would apply in a Chapter 11 case in the United States. The distribution of proceeds pursuant to Onse's Plan of Reorganization is substantially in accordance with United States law. Therefore, affording comity to the Foreign Proceeding is warranted and appropriate. *See In re Petition of Brierley*, 145 B.R. 151, 163–65 (Bankr.S.D.N.Y.1992) (analyzing appropriateness of granting comity); *In re Culmer*, 25 B.R. at 629 (same).

Oxyn's main challenge under section 304(c) involves subsection (2), the "prejudice and inconvenience in the processing of claims" in the foreign proceeding. Oxyn argues that it will suffer severe prejudice and inconvenience if compelled to liquidate its claims in Korea because (I) the cost to Oxyn (and to Onse) of liquidating Oxyn's claims in Korea is higher, (ii) the Oxyn Action is trial ready while the Article 147 action will take a year to get to and through trial, (iii) Oxyn will have severe difficulty in terms of cost and other factors in producing witnesses in Korea, and (iv) Oxyn must pay a stamp duty to pursue its claims in Korea, which it would not have to pay in the United States.

First I note that "courts have routinely rebuffed the claims of creditors that the inconvenience necessarily attendant to litigation in a foreign forum—setting aside the particulars of the forum's legal regime—constitutes grounds for rejection of a Section 304 petition." *See Vesta Fire Ins. Corp. v. New Cap Reinsur. Corp.*, 244

B.R. 209, 218 (S.D.N.Y.2000). "Moreover, we unhesitatingly require foreign creditors to litigate in our courts if they wish a distribution from a U.S. debtor's estate. It is thus difficult to label as so prejudicial and inconvenient to U.S. creditors as to warrant denial of injunctive relief that which we require of foreign creditors in our own cases." *In re Petition of Brierley*, 145 B.R. at 163; *In re Hackett*, 184 B.R. 656 (Bankr.S.D.N.Y.1995); *cf. In re Petition of Caldas*, 274 B.R. 583 (Bankr. S.D.N.Y.2002) (Court allowed creditor to liquidate claim in the United States where "it is not entirely clear that [creditor's] claim can be liquidated anywhere else.")

Oxyn argues that the time and expense involved to conclude the Article 147 proceeding is far greater than what it would take to conclude the Oxyn Action. However, the unrebutted testimony of the Receiver's Korean counsel makes clear that, on average Article 147 proceedings in the Korean District Courts are concluded within 10 to 12 months or less and appeals are concluded within four to six months (Kim Decl. ¶ 38). Thus, it is likely that proceedings in the District Court and on appeal in Oxyn's Article 147 case, which was commenced in August 2003, would likely have been concluded by year end 2004 and April 2005, respectively, but for an interlocutory appeal that Oxyn is now pursuing on the stamp duty. On the other hand, in the Oxyn Action, the parties have not yet commenced preparing pre-trial submissions, motions *in limine*, requested voir dire and requests to charge, and no trial date has been set. Accordingly, the Oxyn Action is not likely to be tried for several months.

In addition, should the Oxyn Action proceed, any judgment rendered in that action would likely be subject to the appeal process and further delay. The claims dismissed by Judge Martin would then also

be subject to appeal. Once that appeal process was concluded, Oxyn would then be required to submit any judgment to the Korean Courts, which may or may not recognize it.

Oxyn also argues that the costs of pursuing its claim in Korea would be substantially higher. Of course, the cost of producing witnesses in either action is of concern to both parties. However, two important witnesses for Onse are senior executives of the company, who are vital to its ongoing reorganization and operations in Korea. On the other hand, Mr. Oh, the President of Oxyn, travels to Korea on a regular basis.

Moreover, the cost to Oxyn of litigating in Korea can be minimized by presenting written testimony and/or deposition testimony from the Oxyn Action in the Article 147 Proceeding. At the hearing on this motion, the Receiver offered to stipulate on the record that he would not oppose the submission of all the depositions taken by both parties in the United States to be used in the Article 147 Proceeding. Thus, much if not all of the extensive and expensive discovery in the Oxyn Action can be preserved for the Article 147 Proceeding. On the other hand, the use of the depositions taken in Korea may not be admissible in the Oxyn Action. Apparently, Oxyn has already moved to exclude at least one deposition testimony of a Korean witness proffered by Onse in that action.

Oxyn also argues that it should not be required to litigate its claim in Korea because in the 147 Proceeding Oxyn was required to pay stamp duty in the amount of $133,000.[4] This argument seems somewhat disingenuous to this court in light of the costs and attorneys fees that have already been expended in pursuing the Oxyn Action. Oxyn's own amended claim, filed on June 26, 2003 in the Korean Court, indicates that Oxyn had *already* incurred expenses, including attorneys' fees, of $1,838,200 in connection with the Oxyn Action and that Oxyn expects to incur a further $2,631,565 in costs in the future.[5]

Moreover, under Korean law, fees are recoverable by a prevailing plaintiff. This rule applies with full force to proceedings, under CRA Article 147, and costs recoverable include any stamp fees paid by petitioner, as well as attorneys' fees. Lastly on this issue, if Oxyn was to continue the Oxyn Action to judgment, it would then have to seek recognition of it in Korea and then pay a stamp duty to effectuate its judgment.

## Conclusion

Accordingly, in balancing all of the factors set forth in section 304(c) and weighing all of the testimony and submissions, I find that Petitioner has set forth sufficient grounds for the relief requested and that any prejudice and inconvenience to Oxyn is outweighed by that to the Petitioner. Thus, based upon the foregoing, the motion for an order permanently enjoining: (i) the commencement or continuation of any civil action or proceeding in the United

---

4. This amount is based upon Oxyn's *ad damnum* request originally and over enthusiastically pegged at $260 million, since reduced to $101 million and subject to further voluntary diminution based upon a more realistic estimate of value following Judge Martin's summary judgment determination and Judge Castel's order denying reconsideration and reargument.

5. Oxyn also argued that its cost to pursue its claims in Korea would be double or triple its costs to continue the Oxyn Action. However, the testimony proffered at the hearing was, at best, unclear as to costs in pursuing the Oxyn claim in either jurisdiction. Oxyn's Korean attorney offered internally inconsistent evidence at the hearing as to both past and future estimates of the litigation costs and I find his estimates unreliable.

States against Onse or involving Onse or its property, including without limitation the Oxyn Action; and (ii) the enforcement of any judicial, administrative, arbitral or regulatory judgment, assessment or order or any arbitration award, and the commencement or continuation of any judicial, administrative, arbitration or regulatory proceeding to create, perfect or enforce any lien, set-off or other claim against Onse in the United States is granted.