**MEDISON AMERICA, INC., a California Corporation, Plaintiff,**

v.

**PREFERRED MEDICAL SYSTEMS, LLC, a Tennessee Limited Liability Company, Jerry K. McGuire, and Gregg Reed, Defendants.**

No. 05–2390–V.

United States District Court, W.D. Tennessee, Western Division.

Nov. 16, 2007.

Larry E. Parrish, Law Offices of Larry E. Parrish, Memphis, TN, for Plaintiff.

Anthony Charles Pietrangelo, Jonathan P. Lakey, Pietrangelo Cook, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DIANE K. VESCOVO, United States Magistrate Judge.

The plaintiff, Medison America Inc. ("Medison"), filed a complaint on May 26, 2005, against the defendants, Preferred Medical Systems, LLC ("Preferred Medical"), Jerry K. McGuire ("McGuire"), and Gregg Reed ("Reed") (collectively the "Preferred Medical defendants"), alleging that the Preferred Medical defendants made false and disparaging statements about Medison to its potential customers. The complaint also named General Electric ("GE"), Mike Butchko, and Brian Keith (collectively the "GE defendants") as defendants, but the complaint was dismissed with prejudice as against the GE defendants on May 22, 2007. Medison's complaint contains allegations of violations of the federal Lanham Act ("Count One"), common law fraud ("Count Two"), common law trade slander and commercial disparagement ("Count Three"), conspiracy to injure business ("Count Four"), unfair trade practices under the laws of Tennessee ("Count Five"), Georgia ("Count Six"), Alabama ("Count Seven"), and Mississippi ("Count Eight"), restraint of trade in Mississippi ("Count Nine"), personal property conversion ("Count Ten"), and tortious interference with business relations ("Count Eleven").

Specifically, Medison alleges that the Preferred Medical defendants made state-

ments to potential customers that Medison was in bankruptcy, had poor service, was going "out of business," and was "going under." These remarks developed into what was referred to as the "Medison Story." Medison contends that the Preferred Medical defendants told the "Medison Story" to potential customers in an effort to dissuade them from purchasing Medison's products and to encourage them to purchase from Preferred Medical. Now before the court is the Preferred Medical defendants' motion for summary judgment as to all counts. The parties have consented to the jury trial of this matter before the undersigned United States Magistrate Judge. For the following reasons, the Preferred Medical defendants' motion for summary judgment is GRANTED.

## STATEMENT OF UNDISPUTED FACTS

For the purposes of this motion, the court finds that the following facts are undisputed:

1. The plaintiff, Medison, is a California corporation. Medison is owned by Medison Co., Ltd. ("Medison, Ltd."), a Korean company. Medison, Ltd. manufactures ultrasound equipment.

2. Medison sells ultrasound equipment throughout the United States. The ultrasound equipment sold by Medison is manufactured by Medison, Ltd.

3. General Electric Company ("GE"), a New York corporation, manufactures ultrasound equipment.

4. Preferred Medical Systems, LLC ("Preferred Medical") is a Tennessee limited liability company.

5. Preferred Medical is an independent manufacturer's representative for GE in the sale of ultrasound equipment and serves in such capacity in the states of Tennessee, Mississippi, Alabama, Arkansas, Louisiana, and Georgia.

6. There are at least 3,000 potential purchasers of ultrasound equipment in the OB/GYN market within the states of Tennessee, Mississippi, Alabama, Arkansas, Louisiana, and Georgia.

7. GE has at least twenty-three (23) service and support personnel in the states of Tennessee, Mississippi, Alabama, Arkansas, Louisiana, and Georgia to repair and service ultrasound equipment.

8. Medison has only two (2) service and support personnel in the United States, both of whom reside in California.

9. In January 2002, Medison's parent company, Medison, Ltd., entered into a receivership procedure in Korea wherein its primary lender assumed joint control of the company along with Medison, Ltd.'s existing management.

10. In a memorandum to Medison, the Korean legal counsel for Medison, Ltd. stated that the reorganization proceedings in Korea were similar to Chapter 11 bankruptcy proceedings in the United States.

11. The reorganization proceedings were conducted under the Company Reorganization Act of Korea, which states the following as its purpose:

> The purpose of this Act is to coordinate the interest of creditors, stockholders and other interested persons, and to strive for the reorganization and recovery of the business, in respect of any joint stock company (hereinafter in this Act referred to as the "company") which faces imminent bankruptcy due to poor financial circumstances, but which is likely to recover economically.

12. Under the Company Reorganization Act of Korea, a company in the reorganization proceedings may be liquidated in certain circumstances.

13. Medison's own auditors described Medison, Ltd.'s proceedings as a "bankruptcy" in a note to Medison's 2003/2004 Financial Statements.

14. The United States Bankruptcy Court for the Southern District of New York described the proceedings under the Company Reorganization Act of Korea as follows: "The record confirms that Korean bankruptcy law, and in particular the Company Reorganization Act, is substantially similar to United States law." *In re Kyu–Byung Hwang,* 309 B.R. 842, 846 (Bankr.S.D.N.Y.2004).

15. According to its own financial statements, Medison had a multi-million dollar deficit in the year 2003, with liabilities exceeding its assets by $25,845,091, and a multi-million dollar deficit in the year 2004, with liabilities exceeding its assets by $24,671,941.

16. Medison, through its Rule 30(b)(6) corporate representative, Robert DePalma ("DePalma"), confirmed the accuracy of the Medison's financial statements.

17. Medison's complaint alleges that the Preferred Medical defendants made certain disparaging statements to potential purchasers, and Medison's Rule 26 Disclosures list prospective customers that Medison contends did not purchase its product because of the alleged disparaging statements. Together, these documents identify the universe of customers to whom Medison alleges the Preferred Medical defendants made disparaging statements about Medison and/or its products (hereinafter, the identity of the prospective customers shall be referred to as the "Prospective Customers").

18. None of the Prospective Customers owned Medison equipment prior to the time of the alleged statements.

19. In its response to interrogatories, Medison stated that the information upon which it based the amended complaint came "exclusively from" Mark Patterson ("Patterson"), Mary Margaret Little ("Little"), and Cheryl Martin ("Martin"). Medison added Martin Harris ("Harris") to this list during its deposition.

20. Patterson has an agreement with Bio–Core, Inc. ("BioCore") to assist them in the sale of Medison ultrasound equipment. Patterson's company and BioCore are the exclusive distributors of Medison ultrasound equipment in the states at issue in the Amended Complaint. Patterson testified that the Preferred Medical defendants made disparaging statements to the Prospective Customers. Patterson also testified that he was not present at the time these statements were made, and that all of his information about the allegedly disparaging statements was based upon the out of court statements of third parties.

21. Patterson testified that he did not have any documents containing the allegedly disparaging statements made by the Preferred Medical defendants to any Prospective Customers.

22. Harris is the sole shareholder and an employee of BioCore. Harris testified about allegedly disparaging statements made to some of the Prospective Customers. Harris also admitted that he was not present at the time that the alleged statements were made and that he did not hear the Preferred Medical defendants make the alleged statements.

23. Little is the sister of McGuire and is a former employee of Preferred Medical. Little's employment with Preferred Medical was terminated on or about July 27, 2004.

24. Little could not identify the customers who allegedly heard statements made by Preferred Medical employee

Scott Martin or exactly what Mr. Martin said to them.

25. Little could not identify the customers who allegedly heard statements made by Preferred Medical employee Kim Wilson.

26. Little identified one specific customer to whom McGuire allegedly made a statement, but Little testified that she did not actually hear the statement.

27. Little was with a customer, Dr. Scott Smith, and testified that McGuire had allegedly made disparaging statements to the customer through her cell phone. Little was with the customer and McGuire was not. Little did not hear what McGuire was alleged to have said to the customer.

28. Dr. Scott Smith is not listed among the doctors included in Medison's list of Prospective Customers.

29. The only other customer Little mentions in her affidavit is an OB practice in New Albany, MS. Little testified that this customer's decision to purchase a GE product, rather than a Medison, was based upon negative information the customer received from another Medison customer, not on information from the Preferred Medical defendants.

30. Little did not speak to any potential purchasers about their reactions to the alleged statements.

31. Little has never heard defendant Reed make disparaging statements about Medison.

32. Cheryl Martin is a former applications technician who worked for GE and Preferred Medical on a contract basis.

33. Cheryl Martin testified about a single incident involving Medison and a potential purchaser. The incident involved a doctor in Alabama and allegedly occurred in the fall of 2003. At the time, Ms.

Martin was not working for Preferred Medical and was in the doctor's office for purely personal reasons. She was accompanying her daughter, who was pregnant, to the doctor's office for her daughter's ultrasound.

34. Medison's corporate representative admitted that Medison has received complaints from its customers.

35. A customer complaint against Medison ripened into a lawsuit against Medison in Alabama in May 2003. The suit alleged, among other things, that Medison "negligently repaired the equipment or negligently failed to repair the equipment on numerous occasions."

### STATEMENT OF DISPUTED FACTS

The parties dispute the following facts:

1. The Preferred Medical defendants argue that they did not make any false or misleading statements of fact concerning Medison or Medison's products or services to the Prospective Customers. Medison contends, however, that the Medison Story contained false, misleading, and disparaging statements and that the testimony of Little and Cheryl Martin fully describes the Medison Story and how and when it was communicated to the Prospective Customers.

2. The Preferred Medical defendants argue that Little testified that while working for Preferred Medical she had made allegedly disparaging statements about Medison, but she could not identify any specific customer to whom such statements were made. Medison disputes this statement, arguing that Little identified the customers to whom she made the disparaging statements as every Prospective Customer of 3D and 4D machines she spoke to that was seeking to purchase Medison products.

3. The Preferred Medical defendants argue that Medison admitted that the Preferred Medical defendants had not exercised dominion and control over any of Medison's property. Medison disputes this statement to the extent that it calls for a conclusion of law.

4. The Preferred Medical defendants argue that Medison admitted that the Preferred Medical defendants had not interfered with any contracts Medison may have had with third parties. Medison disputes this statement to the extent that it calls for a conclusion of law.

## ANALYSIS

The critical issue before the court on this motion for summary judgment is whether Medison has sufficient evidence to support the essential elements necessary to make out a case in each of the eleven counts. The Preferred Medical defendants argue that Medison lacks evidence to establish all the essential elements for each count, that much of the evidence Medison does have is inadmissible hearsay, and that the allegedly disparaging statements were not false or misleading. In contrast, Medison argues that it has enough evidence to satisfy the summary judgment hurdle. Medison contends that the statements made by the Preferred Medical defendants were false and misleading. Additionally, Medison claims that the elements of each count in the eleven-count complaint can be established through the affidavits and depositions of its witnesses and that all such necessary evidence is either non-hearsay or falls under an exception to the rule against hearsay.

### A. *Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also La-Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the nonmoving party must go beyond the pleadings and present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, "this [c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "

*Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Patton,* 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *LaPointe,* 8 F.3d at 378. Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adams v. Metiva,* 31 F.3d 375, 379 (6th Cir.1994).

## B. *Count One—The Lanham Act*

Medison claims that by making false and misleading descriptions and representations of fact to the Prospective Customers that Medison was going out of business, in bankruptcy, and unable to provide service or support, the Preferred Medical defendants violated the Lanham Act, which provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1)(B) (2007). The Preferred Medical defendants argue that summary judgment should be granted because Medison lacks evidence to support all of the essential elements of its Lanham Act claim.

█ In order to establish a successful claim for misrepresentation under the Lanham Act, a plaintiff must show that in connection with "commercial advertising or promotion:"

1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 613 (6th Cir.1999).

### 1. *False or Misleading Statements of Fact*

In order to maintain an action under the Lanham Act, Medison must show that the Preferred Medical defendants made false or misleading statements of fact about Medison's products. To establish the elements of its Lanham Act claim, Medison relies on the affidavits and deposition testi-

mony of Patterson, Harris, Little, Martin, Dr. Robert Sigman ("Dr. Sigman"), Carl Barton ("Barton"), Myra Therber ("Therber"), and Dr. Joseph Austin ("Dr. Austin"). The Preferred Medical defendants argue that Medison has failed to produce any competent evidence that would satisfy this initial element of a Lanham Act claim. Specifically, the Preferred Medical defendants contend that all of Medison's evidence is either inadmissible hearsay or that it fails to show the alleged statements as being false or misleading.

■ For a plaintiff to successfully establish the first element in the Lanham Act claim, it must show that the defendants advertisement "is literally false or that it is true yet misleading or confusing." *Am. Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d at 614. If the statements are literally false, no evidence that customers were actually misled is required to establish a violation because the deception is presumed. *Id.* (citations omitted). If the statements are true, yet deceptive, or inherently ambiguous, then proof of actual deception must be produced before a violation can be established. *Id.* A plaintiff relying on statements that are literally true yet misleading must show how customers actually reacted, not just how they could have reacted. *Id.* Lastly, all statements that a Lanham Act claim is based upon must be ones of fact, not of opinion. *Id.*

It is important to note that hearsay may not be considered on a motion for summary judgment. *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c).

### a. Patterson's Testimony

■ During his deposition, Patterson testified about disparaging statements that were allegedly made to the Prospective Customers. Patterson admitted, however, that he was not present when the statements were made, and that all of his information about the allegedly disparaging statements was obtained from third parties. He also testified that he did not have any documents that contained the allegedly disparaging statements made to any Prospective Customers by the Preferred Medical defendants.

Testimony directly from any of the Prospective Customers stating the Preferred Medical defendants made allegedly disparaging statements would be admissible because it could be offered to prove that the Preferred Medical defendants made the allegedly disparaging statements rather than to show that the information asserted in the alleged statements was actually true, and thus, such testimony would not constitute hearsay. Patterson, however, was not a Prospective Customer. Patterson was testifying about his conversations with Prospective Customers and offering the statements made to him by the Prospective Customers for their truth, that is, that the Preferred Medical defendants made allegedly disparaging statements to the Prospective Customers. This testimony from Patterson represents a first level of hearsay that does not fall under any exception. *See* Fed.R.Evid. 801(c), 802–03. The Seventh Circuit used this analysis when it excluded as hearsay the testimony given by individuals regarding conversations they had with third parties about alleged disparaging statements. *See Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 377–78 (7th Cir.1996). Because the testimony of Patterson is hearsay, it may not be considered on summary judgment. *Jacklyn*, 176 F.3d at 927.

### b. Harris' Testimony

Harris also testified at his deposition about allegedly disparaging statements made to some of the Prospective Customers. Harris, however, admitted that he was not present at the time the alleged statements were made and that he did not hear the Preferred Medical defendants make any of the alleged statements. Using the same analysis applied to Patterson's affidavit, the testimony of Harris is also hearsay. Harris is only testifying about information that was retold to him by Prospective Customers. As such, Harris' testimony may not be considered on a motion for summary judgment.

### c. Little's Affidavit and Deposition Testimony

 Little is a former employee of Preferred Medical who testified that she herself made disparaging statements about Medison to some of the Prospective Customers while she was employed by Preferred Medical. She was unable, however, to specifically identify any of these Prospective Customers by name, stating only that she made the disparaging statements, by telling the Medison Story, to every 3D or 4D customer who mentioned Medison.

In order to satisfy the first element of a Lanham Act claim, the Medison Story, as told by Little, must be shown to be false or misleading. Part of the Medison Story included comments by Little that Medison was bankrupt, on the brink of bankruptcy, or in bankruptcy proceedings. These comments were indeed substantiated by the fact that Medison, Ltd. had entered into a receivership in Korea under the Company Reorganization Act of Korea. Korean legal counsel for Medison, Ltd. stated that the receivership was similar to Chapter 11 bankruptcy proceedings in the United States. Additionally, Medison's own auditors described Medison, Ltd.'s proceedings

as a bankruptcy. Other courts have also found the Company Reorganization Act of Korea to be substantially similar to United States Chapter 11 bankruptcy law. *See In re Kyu–Byung Hwang*, 309 B.R. 842, 846 (Bankr.S.D.N.Y.2004). When taken as a whole, this evidence shows that it is not literally false to say that Medison, Ltd.'s Korean proceedings involve bankruptcy.

Because Medison, Ltd. and Medison share the same business name, it is therefore not literally false to say that "Medison" is involved in bankruptcy proceedings, or to use other variations of the term bankruptcy in relation to Medison. Furthermore, it cannot be considered true yet misleading to refer to Medison, Medison, Ltd., or both as being involved in bankruptcy. Medison, Ltd. wholly owned Medison and manufactured all the equipment that Medison sold. Any negative implications of bankruptcy on Medison, Ltd., such as drastic reorganization or even a closure of business, would have severe repercussions on Medison and its ability to do business. As a result, the statements Little made involving Medison's bankruptcy cannot be considered false and misleading because they are neither literally false nor true yet deceptive. Even if the statements were found to be true yet deceptive, Little provides no testimony that shows how any Prospective Customers actually reacted to the statements, which would prohibit the statements from satisfying the false or misleading element under applicable law. *See Am. Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d at 614.

Little also testified that she made statements, as part of the Medison Story, that Medison was financially unstable. It is undisputed that Medison had multi-million dollar deficits in both 2003 and 2004, with liabilities exceeding its assets by more than $24 million each year. As a California corporation, Medison was insolvent un-

der California law because its debts were greater than all of its assets. *See* Cal. Civ.Code § 3439.02(a) (West 2007).[1] Little's statements about Medison's financial instability are certainly consistent with the facts, and thus, not false or misleading. Furthermore, Little's statements can also be construed as opinions, which are not actionable under the Lanham Act. *Am. Council of Certified Podiatric Physicians and Surgeons,* 185 F.3d at 614.

Another part of the Medison Story, as testified to by Little, included comments that Medison was going out of business. This statement is also an opinion, which is non-actionable under the Lanham Act. *Id.* Lanham Act claims must be based on false or misleading statements of facts, and as the court in *Fieldturf* put it, statements of fact are "specific and measurable claim[s], capable of being proved false," or, in other words, capable of being "adjudged true or false through empirical verification." *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.,* 235 F.Supp.2d 708, 725 (E.D.Ky.2002)(holding that competitor's statements regarding artificial turf manufacturer's systems were not actionable under Lanham Act); *See also Moulton v. VC3,* No. 1:00CV434–TWT, 2000 WL 33310901, *3 (N.D.Ga. Nov. 7, 2000) (stating that statements as to which reasonable people might differ and which cannot be proved true or false are not actionable). The Medison Story, as testified to by Little, stated that Medison was going out of business. When taken in context with the bankruptcy proceedings and financial instability, this statement is a mere prediction or opinion about the future of Medison, and consequently, is not actionable as a false or misleading statement of fact under the Lanham Act.

Lastly, Little testified that the Medison Story contained statements that Medison did not support or had problems servicing ultrasound equipment. When these statements are compared to the record, neither is literally false. Medison only employed two service agents, both of whom resided in California. Service for the equipment that might have been purchased by the Prospective Customers was the responsibility of the local dealer and not Medison. The claim, however, that Medison does not support its equipment seems to be true yet deceptive. Telling a Prospective Customer that Medison does not support its equipment, while technically true, may lead the customer to believe that no support is available, when in fact, all the Prospective Customer would have to do is contact the independent dealer that sold them the Medison product. This being stated, Little failed, however, to provide any testimony as to how any Prospective Customers actually were deceived by or reacted to the claim that Medison did not provide support. Therefore, the statement does not satisfy the first element of a Lanham Act claim.

Similarly, the part of the Medison Story that Little testified to as containing statements that Medison had problems servicing ultrasound equipment is also not a false or misleading statement of fact. Medison, as admitted by its corporate representative, did have complaints against it that related to its service of equipment, one of which ripened into a lawsuit. *See George V. Seir, DVM v. Medison America, Inc.,* No. 02–087–B (Cir. Ct. Autauga County, Ala.). Therefore, stating that Medison had problems servicing equipment is not literally false. It is, however, true yet deceptive. The statement, when given in the context of the Medison Story,

1. Cal. Civ.Code § 3439.02(a) (West 2007) provides: "A debtor is insolvent if, at fair valuation, the sum of the debtor's debts is greater than all the debtor's assets."

could deceive Prospective Customers into believing that Medison's service was substandard and inadequate, and that Medison had problems servicing all its equipment. Little, however, failed to provide any testimony that any Prospective Customers were actually deceived by this statement. As a result, the statement does not rise to the level of a false and misleading statement for purposes of the Lanham Act.

The rest of Little's affidavit contains testimony that she heard others making disparaging statements in the form of the Medison Story to Prospective Customers. In order to survive summary judgment, Medison has to identify to whom the Preferred Medical defendants told the Medison Story, and bare allegations that the Medison Story was told to unidentified third parties is insufficient. *See Morgan v. New York Life Ins. Co.*, No. 1:05cv2872, 2006 WL 2524237, *6 (N.D.Ohio Aug. 30, 2006). Little testified that she heard Scott Martin and Kim Wilson tell the Medison Story to Prospective Customers. Little failed, however, to identify any of the people that Scott Martin or Kim Wilson were speaking to when she heard them telling the Medison Story. As a result, Little's testimony regarding Mr. Martin's and Ms. Wilson's statements cannot establish that the Preferred Medical defendants made a false or misleading statement of fact.

One of the individual customers that Little was able to identify by name was Dr. Sigman, in Alabama, who allegedly was told the statements in the Medison Story by McGuire. Little, nonetheless, was not present at the time McGuire allegedly told the Medison Story to Dr. Sigman. Little testified that McGuire told her that he had told the Medison Story to Dr. Sigman. Assuming that this testimony is admissible non-hearsay, the Medison Story, as described by Little and analyzed above, still does not contain the necessary statements of false or misleading facts, coupled with corroborating testimony about their effect on Dr. Sigman, to satisfy the first element of a Lanham Act claim. Additionally, there is no testimony to suggest that any version of the Medison Story told by McGuire would contain additional statements that might rise to the level required to satisfy the first element of the Lanham Act.

Little also identified Dr. Scott Smith as a person who had been told the Medison Story. In this instance, McGuire allegedly told Dr. Smith the Medison Story over Little's cell phone. Little was present with Dr. Smith while McGuire spoke with him over the phone. Little could not hear what McGuire told Dr. Smith, and she provided no testimony indicating that McGuire told her what he had told Dr. Smith. This testimony is insufficient to establish an issue of material fact as to whether McGuire made false or misleading statements of fact to Dr. Smith for purposes of a Lanham Act claim.

In summary, Little's affidavit and deposition testimony is insufficient to establish that the Preferred Medical defendants made any false or misleading statements of fact that satisfy the necessary criteria to be actionable under the first element of the Lanham Act.

### d. Cheryl Martin's Affidavit

█ Martin testified about one specific time when she made a statement to a Prospective Customer about Medison being in bankruptcy. As discussed previously, the statement that Medison was in bankruptcy cannot be considered false or misleading. Furthermore, Cheryl Martin was not working for Preferred Medical at the time she made the statement; she was only in the Prospective Customer's office for personal reasons. Because she was

not acting in the scope of employment for Preferred Medical, no statements she made could rightly be attributed to the Preferred Medical defendants for purposes of a Lanham Act claim. *See Parker v. General Extrusions, Inc.*, 491 F.3d 596, 602 (6th Cir.2007) (stating that an employer is liable only when an employee was acting in the scope of employment). Thus, Cheryl Martin's affidavit fails to provide any evidence of a false or misleading statement of fact that was made to any Prospective Customer by the Preferred Medical defendants.

#### e. Dr. Sigman's Affidavit

■ Dr. Sigman, a Prospective Customer, testified that McGuire told him that Medison was financially unstable and bankrupt. As discussed above, neither statement is literally false when applied to Medison. The question then becomes whether the statements were true yet deceptive. Dr. Sigman testified that McGuire's statements gave him the impression that Medison "was or was on the verge of going out of business." This statement is not indicative of deception because the financial numbers for Medison, as previously discussed, suggested strong instability in the company, and thus, Dr. Sigman's impression does not indicate that he was actually deceived by McGuire's statements.

Dr. Sigman also testified that McGuire told him Medison could not provide service or maintenance and repair on its equipment. While technically true, as discussed above, there is no evidence that Dr. Sigman was actually deceived by the statements. Dr. Sigman testified that it was Medison's and Preferred Medical's emphasis on each other, instead of the products, that turned him away from purchasing from either. In no way does this testimony suggest that Dr. Sigman was actually

deceived by any statements from the Preferred Medical defendants. If anything, Dr. Sigman's testimony suggests that he was frustrated with the situation and decided to purchase from another company, whether he believed McGuire or not.

#### f. Barton's Affidavit

Barton testified to one particular instance of disparaging statements related to her by Joanne Pippin, a person who worked for a Prospective Customer. Barton testified that McGuire made statements about Medison's bankruptcy to Pippin during a demonstration. As discussed above in the section on Patterson's testimony, Barton's testimony about what McGuire told Pippin is hearsay and cannot be considered for summary judgment.

#### g. Therber's Affidavit

■ Therber testified that McGuire made disparaging statements to Dr. Drucker in Dalton, Georgia. Therber states that McGuire told Dr. Drucker that Medison was having bankruptcy problems. The affidavit does not state the basis for Therber's knowledge. It is impossible to tell from her testimony if she was present when the statements were made or received the information from a third party. Because Therber did not work with McGuire, the context does not suggest that she would have been present when the statements were allegedly made. This creates a high likelihood that her testimony is based on inadmissible hearsay. The Eighth Circuit found that when the context and content of an affiant's testimony does not support an inference that it is based upon personal knowledge, that testimony may be properly ignored. *See Brooks v. Tri–Systems, Inc.*, 425 F.3d 1109, 1111–12 (8th Cir.2005). As a result, Therber's testimony fails to establish the

existence of any false or misleading statement of fact.

### h. Austin's Affidavit

Dr. Austin, a Prospective Customer, testified that McGuire made statements to him about Medison being in shaky financial condition and having trouble servicing its products. As previously discussed, these statements were not literally false. Therefore, in order to be actionable, the statements must be true yet deceptive. Dr. Austin provides no evidence to suggest that he was actually deceived by the statements. In fact, Dr. Austin's testimony suggests that he was not deceived because he purchased a Medison product despite the statements made by McGuire. As a result, Dr. Austin's testimony provides no evidence that actionable false or misleading statements were made for purposes of a Lanham Act claim.

### i. Summary

After analyzing the proof, undisputed facts, and affidavits in this case, this court finds that Medison has not presented sufficient evidence to create a material issue of fact as to whether false statements of fact were made by the Preferred Medical defendants or whether any other statements of fact actually deceived any of the Prospective Customers. Consequently, the first element of the Lanham Act claim is not satisfied.

### 2. Materiality of Statements

 In order to prevail on a claim under the Lanham Act, Medison must be able to show that "the statement is material in that it will likely influence the deceived consumer's purchasing decisions." *Am. Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d at 613. Even if the statements are literally false, the plaintiff must still establish materiality. *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir.2002). The determination of materiality should take into account the relevant consumer market, and it should be assessed from the relevant consumer perspective. *See Fed. Express Corp. v. U.S. Postal Serv.*, 40 F.Supp.2d 943, 953 (W.D.Tenn.1999). Other courts have held this element to require proof that a potential customer would have bought the plaintiff's product had it not been for the false or misleading statements of the defendant. *See IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir.2002).

 In this case, Medison has presented no evidence that the purchasing decisions of the Prospective Customers were influenced by any false or misleading statements from the Preferred Medical defendants. Little did not speak to any of the Prospective Customers about their reactions to the allegedly false and misleading statements that she made. Martin, Barton, and Therber provide no concrete evidence that Prospective Customers' purchasing decisions were effected by statements from the Preferred Medical defendants. Indeed, Dr. Sigman and Dr. Austin, the only two Prospective Customers who testified, provide no evidence or statements that their purchasing decisions were influenced by false statements from the Preferred Medical defendants. Dr. Sigman did not testify that he would have purchased a Medison product had it not been for the deceptive statements of the Preferred Medical defendants, and Dr. Austin actually purchased a Medison product, proving any statements did not influence him.

In summary, Medison has not provided any evidence that creates a material issue of fact regarding the materiality of any false or misleading statements. Neither Dr. Sigman nor Dr. Austin were deceived

by the statements made by McGuire, and as a result, their purchasing decisions could not likely have been materially influenced as required for a Lanham Act claim. The rest of Medison's witnesses provide no testimony that can prove any false or misleading statements were made by the Preferred Medical defendants, or that any of those statements materially influenced the purchasing decisions of any of the Prospective Customers. As a result, Medison has not satisfied this element of making out a prima facie case under the Lanham Act.

### 3. Other Elements

Because Medison has failed to provide sufficient evidence to establish that the Preferred Medical defendants made any false or misleading statements of fact or that any statements actually deceived a Prospective Customer and influenced a purchasing decision, this court need not address the other required elements to make out a claim under the Lanham Act.

### 4. Summary

Medison has failed to provide sufficient evidence to establish two of the five elements required for a Lanham Act claim. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count One is GRANTED.

### C. *Count Two—Common Law Fraud*

Medison claims that the Preferred Medical defendants have committed common law fraud against it. Medison alleges that the Preferred Medical defendants took, by deceit, rights and entitlements of value to Medison and other corporeal and incorporeal property of Medison. The Preferred Medical defendants argue that Medison lacks sufficient evidence to support all of the essential elements of its common law fraud claim.

In order to sustain an action "for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 371 (Tenn.Ct.App. 2006). If a non-moving party who bears the burden of proof "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment must be entered against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In this case, Medison provides no evidence to show that it "reasonably relied on the misrepresented material fact." In fact, Medison does not even allege that it relied on any representations of material facts. The amended complaint only alleges that false statements were made to the Prospective Customers, not to Medison. Accordingly, because Medison has failed to provide any evidence to establish one of the essential elements of its claims, the Preferred Medical defendants' motion for summary judgment as to Count Two is GRANTED.

### D. *Count Three—Common Law Trade Slander and Commercial Disparagement*

Medison claims that the Preferred Medical defendants have committed common law trade slander and commercial disparagement against it. Medison alleges that the Preferred Medical defendants made

false and misleading statements that defamed the business reputation of Medison in the marketplace. The Preferred Medical defendants argue that Medison lacks evidence to support all of the essential elements of its claims.

Under the common law of Tennessee, there are no causes of action entitled "Trade Slander" or "Commercial Disparagement." This court must assume, as did the Preferred Medical defendants, that Medison is referring only to a general defamation action involving slander, or spoken defamation. Medison does not argue to the contrary in its reply briefs. In order to sustain a cause of action for defamation in Tennessee, the plaintiff must show that "1) a party published [by communicating to a third person] a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn.1999).

As previously discussed under Count One, Medison lacks evidence to support allegations that the Preferred Medical defendants made false statements to third parties. Furthermore, the record is entirely silent as to any evidence that the Preferred Medical defendants either knew the statements to be false or were reckless or negligent in failing to ascertain whether the statements were false. When, as is the case here, statements "convey true concepts and/or opinions of the publishers supported by true facts," the defamation action will fail. *Wagner v. Fleming*, 139 S.W.3d 295, 303 (Tenn.Ct.App.2004). Accordingly, because Medison lacks evidence to establish the essential elements of its claims, the Preferred Medical defendants' motion for summary judgement as to Count Three is GRANTED.

### E. *Count Four—Conspiracy to Injure Business*

Medison claims that the Preferred Medical defendants have engaged in conspiracy to injure business. Medison alleges that the Preferred Medical defendants conspired to injure Medison's business by using unfair competition and disparagement. The Preferred Medical defendants argue that no such cause of action exists in Tennessee, and that the most analogous cause of action is civil conspiracy. Medison does not argue to the contrary in its reply briefs. This court will assume that Count Four is a civil conspiracy cause of action.

A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 353 (1948). As previously discussed, Medison lacks evidence to prove that the Preferred Medical defendants have engaged in any unlawful conduct that harmed Medison. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Four is GRANTED.

### F. *Count Five—Unfair Trade Practices in Tennessee*

Medison claims that the Preferred Medical defendants engaged in unfair trade practices in violation of TENN.CODE ANN. §§ 47–25–101, 47–18–104(b)(8). Medison alleges that the Preferred Medical defendants, through disparaging statements, engaged in deceptive acts and practices that proximately caused injury to Medison and lessened full and free competition. The Preferred Medical defendants argue that

Medison lacks evidence to prove the essential elements of these claims.

■ The first part of Count Five is Medison's assertion that the Preferred Medical defendants violated the Tennessee Trade Practices Act ("TTPA"), which provides:

> All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

TENN.CODE ANN. § 47–25–101 (2007). This statute is not one normally asserted in cases involving disparagement, defamation, or slander. In order to determine whether the TTPA applies to the given facts, the focus is "not on the anticompetitive conduct itself, but on the *effects* of the conduct on Tennessee commerce." *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 524 (Tenn.2005). Bare allegations that prices were raised as a result of conduct is insufficient to establish that Tennessee commerce was substantially affected. *Id.*

As previously discussed under the Lanham Act claim, Medison has provided no evidence that the Preferred Medical defendants have engaged in any type of anticompetitive conduct that raised prices and injured Medison. Medison cannot prove that the Preferred Medical defendants were part of any arrangement, contract, agreement, trust, or combination that caused Medison injury. In fact, as discussed previously, Medison has no evidence to prove any injuries at all. Consequently, Medison fails to provide evidence to sustain a cause of action under the TTPA.

Medison also makes a claim under the Tennessee Consumer Protection Act ("TCPA"), which prohibits "[d]isparaging the goods, services or business of another by false or misleading representations of fact." TENN.CODE ANN. § 47–18–104(b)(8) (2007). This cause of action is Tennessee's state law equivalent of a Lanham Act claim. For the reasons previously discussed under Count One, Medison fails to provide sufficient evidence to create an issue of material fact regarding this state law claim.

Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Five is GRANTED.

## G. *Count Six—Unfair and Deceptive Trade Practices in Georgia*

Medison claims that the Preferred Medical defendants engaged in unfair and deceptive trade practices in violation of GA. CODE ANN. § 10–1–372(a)(8) (2007). The statute prohibits engaging in deceptive trade practices by disparaging the goods, services, or business of another through false or misleading representations of fact. *See* GA.CODE ANN. § 10–1–372(a)(8) (2007).

This cause of action is Georgia's state law equivalent of a Lanham Act claim. For the reasons previously discussed under Count One, Medison fails to provide sufficient evidence to create an issue of material fact regarding this state law claim. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Six is GRANTED.

### H. *Count Seven—Unfair and Deceptive Trade Practices in Alabama*

Medison claims that the Preferred Medical defendants engaged in unfair and deceptive trade practices in violation of ALA. CODE § 8–19–5(8) (2007). The statute prohibits engaging in deceptive trade practices by disparaging the goods, services, or business of another through false or misleading representations of fact. *See* ALA. CODE § 8–19–5(8) (2007).

This cause of action is Alabama's state law equivalent of a Lanham Act claim. For the reasons previously discussed under Count One, Medison fails to provide sufficient evidence to create an issue of material fact regarding this state law claim. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Seven is GRANTED.

### I. *Count Eight—Unfair and Deceptive Trade Practices in Mississippi*

Medison claims that the Preferred Medical defendants engaged in unfair and deceptive trade practices in violation of MISS. CODE ANN. § 75–24–5(2)(h) (2007). The statute prohibits engaging in deceptive trade practices by disparaging the goods, services, or business of another through false or misleading representations of fact. *See* MISS.CODE ANN. § 75–24–5(2)(h) (2007).

This cause of action is Mississippi's state law equivalent of a Lanham Act claim. For the reasons previously discussed under Count One, Medison fails to provide sufficient evidence to create an issue of material fact regarding this state law claim. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Eight is GRANTED.

### J. *Count Nine—Restraint of Trade in Mississippi*

Medison claims that the Preferred Medical defendants alleged disparagement violated Mississippi's state anti-trust provision. The statute provides protection against "a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others" when the effect of the agreement would be "inimical to the public welfare" and would "restrain trade." MISS.CODE ANN. § 75–15–1(a) (2007). In order to maintain a cause of action under this statute, courts have required plaintiffs to show that the alleged conduct is in some way hostile to the public welfare. *See Hardy Bros. Body Shop, Inc. v. State Farm Mutual Auto. Ins. Co.,* 848 F.Supp. 1276, 1290 (S.D.Miss.1994).

Here, as previously discussed under Count Five, Medison has made no showings that there was any contract or agreement that resulted in the restraint of trade. Furthermore, Medison has failed to provide any evidence as to how the Preferred Medical defendants alleged actions were hostile to the public welfare. This is not an anti-trust case and conclusory allegations, without further evidence, that the Preferred Medical defendants lessened competition by disparaging Medison cannot convert it into one. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Nine is GRANTED.

### K. *Count Ten—Common Law Personal Property Conversion*

Medison claims that the Preferred Medical defendants used disparagement to convert personal property of Medison and exercised control over the property with no intent to return it. The Preferred Medical defendants argue that Medison lacks any evidence to establish its conversion claim. Conversion is "the appropria-

tion of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.,* 173 S.W.3d 43, 60 (Tenn.Ct. App.2002) (citations omitted).

 In this case, Medison has failed to provide any evidence that the Preferred Medical defendants are exercising control over any of Medison's property. Furthermore, Medison's designated corporate representative admitted that the Preferred Medical defendants had no property that belongs to Medison. Medison only argues that the Preferred Medical defendants' disparagement has exercised control over intangible or inchoate rights. These rights are not tangible property. There is no authority for a claim of conversion of intangible property. *B & L Corp. v. Thomas,* No. 01–A–01–9506–CH00274, 1996 WL 518079, *4 (Tenn.Ct.App. Sept. 13, 1996). Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Ten is GRANTED.

## L. *Count Eleven—Common Law Tortious Interference with Business Relations*

Medison claims that it has an inviolable right to cultivate and maintain business relations with potential and existing customers and that the Preferred Medical defendants tortiously interfered with that right when they disparaged Medison. The Preferred Medical defendants argue that Medison has failed to present any competent evidence to support the necessary elements of its claim.

 In order to establish a claim for tortious interference with business relations, a plaintiff must show:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau–Med of America, Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn.2002) (citations and footnotes omitted). When seeking to show improper motive, a plaintiff must "demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Id.* n. 5.

 As previously discussed under Count One, Medison has failed to provide any competent evidence that the Preferred Medical defendants interfered with any of Medison's business relationships. Medison's corporate representative stated that the Preferred Medical defendants had not interfered with any third party contracts of Medison' s. Additionally, Medison has presented no evidence that the Preferred Medical defendants acted with improper motives or used improper means as required by the case law, and Medison has shown no evidence that the Preferred Medical defendants intended to cause breach or termination of any applicable business relationship. Accordingly, the Preferred Medical defendants' motion for summary judgment as to Count Eleven is GRANTED.

## CONCLUSION

For the reasons stated above, this court finds that Medison has failed to show that there are genuine issues of material fact at issue in this case and finds that the Preferred Medical defendants are entitled to a judgment as a matter of law on each of the eleven counts. Accordingly, the Preferred

Medical Defendant's motion for summary judgment is granted as to all counts.

IT IS SO ORDERED.